UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PAUL WEISS,

                 Plaintiff,

      -against-

HUSTEDT CHEVROLET, HUSTEDT CHEVROLET,
INC., HUSTEDT HYUNDAI,  HUSTEDT HYUNDAI,
INC., and CHARLES CHALOM, individually
and in his capacities as owner and/or agent of
Hustedt Chevrolet, Hustedt Chevrolet, Inc.,
Hustedt Hyundai, and Hustedt Hyundai, Inc.,
and JOHN DOES 1-20

                 Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

Civil Action No. 05-4230
(DRH) (MLO)

**APPEARANCES:**

**Steinberg, Fineo, Berger & Fischoff, P.C.**
Attorneys for Plaintiff
401 Broadhollow Road, 4th Floor
Melville, New York 11746
By:    Sharon D. Simon, Esq.

**Milman Labuda Law Group, PLLC**
Attorneys for Defendants
3000 Marcus Avenue, Suite 3003
Lake Success, New York 11042
By:    Perry S.  Heidecker, Esq.
       Michael J. Mauro, Esq.

**HURLEY, Senior District Judge:**

This action is one of several pending before this Court in which a former employee of

Defendants Hustedt Chevrolet, Hustedt Chevrolet Inc. ("Chevrolet Inc."), Hustedt Hyundai,

and/or Hustedt Hyundai, Inc. (collectively "Dealership Defendants") is seeking redress for the alleged discriminatory and retaliatory practices of Defendant Charles Chalom ("Chalom"),[1] owner of Dealership Defendants, and hostile work environment created by him. In the instant case, Plaintiff Paul Weiss ("Plaintiff" or "Weiss") asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., and the New York Executive Law § 296. More specifically, he alleges that he was subjected to a hostile work environment based on gender, religion, and disability and that he was subjected to retaliatory discharge. He further alleges that Defendants unlawfully interfered with his rights granted under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA") and that defendants failed to pay him for accrued but unused vacation pay. Presently before the Court are Defendants' motion for summary judgment and Plaintiff's cross-motion for partial summary judgment. For the reasons set forth below, Defendants' motion is granted in part and denied in part and Plaintiff's motion is denied.

### *Background*

Dealership Defendants are engaged in the sale and lease of cars and trucks. Weiss was employed by Chevrolet Inc. as finance manager from 1992 to 1994 and as finance director for the period 1997 until October 2004,[2] at which time he claims he was constructively discharged.

---

[1] Dealership Defendants and Chalom shall be collectively referred to as Defendants.

[2] According to Weiss's deposition testimony he was employed by Chevrolet, Inc. but during his second period of employment for that dealership he "performed services" for Hyundai Inc. for approximately one and a half years after it was first "purchased" by Chalom. (Weiss Dep. at 25-28). It is undisputed that Chalom purchased and incorporated Hyundai Inc. in October 1997. Therefore, it would appear that any services performed by Weiss for Hyundai Inc. occurred prior to 2000, outside of the relevant statue of limitations.

Chalom owns 100% of the stock of Chevrolet Inc.[3] and was Weiss's supervisor. Chalom has the final decision-making authority for the Dealership Defendants.

Josephine Caronia ("Caronia") was also employed by Chevrolet Inc. and held the position of Controller. Other co-workers of Plaintiff and Caronia were Kevin Pratt ("Pratt"), Andrew Levy ("Levy") and Frank Ventimiglia ("Ventimiglia"). Caronia, Weiss, Pratt and Ventimiglia all commenced actions against Defendants alleging discrimination.[4] It is alleged that Chevrolet Inc. "suffered from an extremely hostile work environment, where use of ethnically, racially and sexually inappropriate slurs and insults by the owner, Charles Chalom, was [sic] a normal and daily course of events." (Pl.'s Mem. in Opp. at 9.)

Weiss claims he was subject to a hostile work environment as a result of his religion. Weiss is Jewish, as is Chalom. According to Weiss, Chalom made only one statement based on Plaintiff's religion in the 8-1/2 years of his employment at Chevrolet Inc.: sometime "probably in 2004" Chalom told other people in the office that Weiss was a "Russian Jew Spy" and "don't believe anything he ever tells you. He is a liar." (Weiss Dep. 20, 58.)[5]

Weiss also claims he was subjected to a hostile work environment based on disability. Weiss has diabetes. Weiss testified that at least 3 to 4 times, Chalom made demeaning

---

[3] It is also uncontested that Chalom owns 100% of the stock of defendant Hustedt Hyundai Inc.

[4] Although these actions are also before this Court, the actions have not been consolidated. Each of the five actions remain separate. Accordingly, the instant motion for summary judgment will be decided solely on the record in this case.

[5] Weiss did not contest Defendants' assertion in their 56.1 statement that Chalom made only one statement based on Weiss's religion. (Pl.'s Resp. to 56.1 at ¶ 28.) Nonetheless, Weiss offers the deposition testimony of Caronia that she heard Chalom tell Weiss "he was not really a Jew." (Caronia Dep. at 366; Pl.'s Resp. to 56.1 at p.25 )

comments directly to him about his diabetes, although he could recall only three specific instance. (Weiss Dep. at 50, 54-55.) The first incident occurred when Chalom, who liked to talk about his experiences with women, said to Weiss "you must have problems being a diabetic, that must affect you." (Weiss Dep. at 42.) Weiss could not recall even the year in which this comment was made. (*Id.* at 41.) Chalom's second comment was "you had better watch your wife because I know you can't take care of her, so someone else will." Again, Weiss could not provide a time frame for the comment. (*Id.* at 43-44.) The third comment was made by Chalom probably in "2003 or 2004" in front of a number of employees, while Weiss was speaking with Caronia. Chalom said "what kind of bullshit are you telling these women Weiss? You are an impotent diabetic." (*Id.* at 47.)

Weiss also claims he was subject to a hostile work environment based on sex. He offers the following support.

> a. Chalom interrogated male employees, including Ventimiglia . . . and Weiss as to whether they were having an affair with Caronia. (Caronia Dep. p. 326).
> b. Chalom testified that Caronia dressed to "tease men in the entire building," and stated that she provoked them sexually. (Chalom Dep. p. 136).
> c. Chalom was concerned about Caronia and men in the dealership. He testified that Caronia dressed improperly, and that she did so "for every man in the building. She used her sex appeal to get what she's getting. I thought at one time those men going to sue me. Paul Weiss and Frank Ventimiglia going to sue me for sexual harassment for [Caronia], that's what I was worried about." (Chalom Dep. p. 137).
> d. In the summer of 2004, Chalom accused Weiss of having a sexual affair with Caronia. Weiss was in an office with Ventimiglia and another manager and Chalom told Weiss, I know you're having sex with [Caronia]. All she has to do is bat her eyes at you and you do whatever she wants. She's taking control of you. I don't want you having an affair with her. (Weiss Dep. p. 470).

e.  Chalom testified that Weiss was a "coward" and that he was scared of Caronia.  (Chalom Dep. p. 184).

f.  Weiss recalled that Chalom would physically grab Caronia's breasts in front of other people  Once Chalom grabbed Caronia and pulled her on his lap in front of Weiss and Ventimiglia and told them to leave his office as Caronia struggled to get off his lap. (Weiss Dep. p. 80).

g.  Chalom came to Weiss almost in tears telling Weiss that he had to talk to Caronia for Chalom.  Chalom told Weiss he should tell Caronia Chalom was good for Caronia and that she should be with Chalom and that she should sleep with Chalom. (Weiss Dep. p. 80-81).

h.  Chalom discussed Caronia with Weiss approximately 10-15 times in the last year of Weiss's employment. (Weiss Dep p. 81).

(Pl.'s Resp. to 56.1 at p. 23-24.)

Weiss also offers the following incidents which he terms "workplace offensiveness."

- Weiss was called in to Chalom's office where Chalom was meeting with General Motors executives and Weiss was asked to tell them how much money he made.  When Weiss asked Chalom why he was asking the question, Chalom slammed his hands on the desk and screamed, "you make more money that the President of the United States, Get the f--k out of my office.["]  Weiss believes this was done to humiliate him in front of General Motors executives.

- Chalom accused Weiss of anti-Semitism towards Chalom.

- Referring to the [Ventimiglia, Caronia, Pratt and Levy,] Chalom stated that he "made them somebody from nobody."

- Chalom's behavior worsened as Weiss worked there, beginning in the year 2001.

- Chalom made derogatory comments non stop. Chalom admitted using the "F" word in the dealership.  The word 'nigger' in the dealership. [sic]

- Chalom referred to the owner of a competing dealership as a "queer" or as the "queer nation." When Chalom wanted to intimidate or embarrass or

yell at the managers he would say "you are like that f-----g queer of the queer nation of Ramp Chevy. Chalom made references to the competing owner's sexual orientation at least 40-50 times, probably a lot more."

- Chalom had a meeting with his managers, including Weiss, where he yelled and screamed at them and told them that they worked like a bunch of f-----g pussies and they were all a bunch of f-----g queers and they should go to work at the f-----g queer nation, screaming and pounding on his desk while saying these things.
- Weiss heard Chalom make offensive and vulgar remarks about ethnic groups and minorities five to ten times. Weiss was referring to blacks and Italians. The first time Weiss heard Chalom make remarks about Black people was in 2003. Chalom mentioned that one of his female employees was married to a "nigger."

Pl.'s Resp. to 56.1 at p. 25-27 (record citations omitted).

Weiss also offers evidence of two incidents of violence by Chalom. Caronia testified at her deposition that she saw Chalom grab Weiss by the arm and pull Weiss by his arm. Neither the circumstances surrounding the incident nor its approximate date are specified. (Caronia Dep. at 366.) According to Weiss's deposition testimony another incident occurred in the summer of 2004. "Chalom began mumbling to Weiss and when Weiss asked Chalom whether he had been talking to Weiss, Chalom blurted out, who the f--k do you think you are, My name is on the dealership, you are not more important than me then ran at Weiss, grabbed him and pushed him down." Pl.'s Resp. to 56.1 at p. 25 (citing Weiss Dep. 18-19; Caronia Dep. at 366-67.)

Turning then to Weiss's retaliation claim, Weiss relies upon his deposition testimony that he complained to Chalom about his sexual harassment of Caronia; in the last year of his employment he complained to Chalom ten to fifteen times at least. He "told Chalom to leave

Caronia alone, to forget about it and just stop, that he was hurting himself and hurting her and hurting everyone around him." (Pl.'s Resp. to 56.1 at 28 (citing Weiss Dep. at 79-81).) As to his own treatment, Weiss says he "also objected to Chalom cheating him on commissions by lowering the value of traded in cars after the new car had been delivered. This occurred in 2003 and 2004. Weiss informed Chalom that here was a mistake on his commissions. Chalom told Weiss, among other things, this is not a democracy, I can do whatever I want. If you don't like it get out." (*Id.* (citing Weiss Dep. at 60-61).)

As a result of these "protests" Weiss says Chalom assigned "Emad," an individual who was not qualified, to work in Weiss's department, thereby decreasing Weiss' potential income. Emad was assigned to work with Weiss in June 2004, after Ventimiglia advised Chalom he did not want to work with Emad. When Weiss told Chalom that Emad was doing things he thought were illegal, Chalom told him to leave the individual alone or Weiss would be fired and that it was none of his business. Weiss was asked by General Motors to "pull the deals;" Emad was eventually arrested. (Pl.'s Resp. to 56.1 at 28-29.) The nature of the charges against Emad is unclear but would appear to be related to the use of false social security numbers to obtain vehicle financing. (*See id.* at 29.)

Weiss also claims that Chalom retaliated against him when Chalom decided to transfer Weiss to Hyundai because Chalom felt Weiss was getting too close to Caronia. "Chalom told Weiss he had grown too close to Caronia and that he had to move Weiss away from Caronia. Weiss felt this was demeaning because Chalom was accusing Weiss and other males of having sex with Caronia behind Chalom's back." (Pl.s' Resp. to 56.1 at 29 (citing Weiss Dep. at 44-45).) The transfer would have resulted in a reduction in Weiss's income because Hyundai was

not as busy and Weiss would have seen fewer customers. Weiss left Chevrolet Inc.'s employ before the transfer occurred.

Additional factual information shall be discussed to the extent relevant to the issues at hand.

*Discussion*

## I. Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence,"

*Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party

will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "'persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e). More particularly, although "summary judgment should be used sparingly" in cases where the material fact at issue is the defendant's intent or motivation, the plaintiff must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

**II. Hostile Work Environment**

    **A. The Standard**

"Title VII creates a cause of action based on the presence of a hostile working environment when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment. . . .'" *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999) (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)).

To establish a hostile work environment claim, a plaintiff must prove "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). The plaintiff must "show that the complained of conduct: (1) 'is objectively severe or pervasive - that is, creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex [or color or race or religion or national origin].'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (ellipses in original omitted) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)). In other words, the plaintiff "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his/]her employment were thereby altered." *Alfano*, 294 F.3d at 373 (internal citations omitted).

"This test has objective and subjective elements: the misconduct shown must be 'severe

or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In analyzing a plaintiff's case, "courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Id.* (citing *Harris*, 510 U.S. at 23). Relevant factors include "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). "But it is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano*, 294 F.3d at 374 (citing *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) and *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999)).

As the Second Circuit has noted on more than one occasion:

> While the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that "[w]hile a mild, isolated incident does not make a work environment hostile, the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" (alteration and emphasis in original).
>
> *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir.2003) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir.2000)). "The environment need not be 'unendurable' or 'intolerable.'" *Id.* In brief, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Id.* (quoting *Whidbee*, 223 F.3d at 70 (internal quotation marks omitted)).

*Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)

"Because the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who [him]self experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support [his] claim." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). "Nor must offensive remarks or behavior be directed at individuals who are members of the plaintiff's own protected class. Remarks targeting members of other minorities, for example, may contribute to the overall hostility of the working environment for a minority employee." *Id.*

Finally, it is axiomatic that in order to establish a hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of his membership in a protected class. In other words, an environment which is equally harsh for both men and women or for both young and old does not constitute a hostile working environment under the civil rights statutes." *See Brennan,* 192 F.3d at 318.[6] *See also Alfano,* 294 F.3d at 374 ("in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex").

Defendants' move to dismiss Weiss's hostile work environment claims arguing (1) Weiss has failed to adduce facts to support his claim of a hostile work environment based on his religion, (2) Weiss hostile work environment claims based on disability fails as a matter of law; and (3) Weiss does not have standing to pursue hostile work environment claims based on discrimination against others who belong to a protected class of which the he is not a member.

---

[6] Hostile environment claims are governed by the same standards under Title VII and the NYSHRL. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998).

**B.      Hostile Work Environment Based on Religion**

Defendants' motion for summary judgment on Plaintiff's hostile work environment claim based on his own religion is premised on three arguments.  First, Plaintiff was not subjected to severe and pervasive anti-Jewish comments.  Second, Plaintiff's terms and conditions were not affected by any of the alleged comments.  Third, Plaintiff cannot support his claim of a hostile work environment based on his religion by reference to alleged  comments made against other employees who are member of a class to which Plaintiff does not belong.

Viewing the record as a whole, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *Alfano*, 294 F.3d at 374, the Court finds that no reasonable jury could find that the conduct to which Plaintiff was subjected created an hostile work environment based on religion.  Plaintiff points to only one comment, unaccompanied by any physical contact, which while clearly inappropriate is not sufficiently severe in and of itself to support a claim for a hostile work environment based on religion.  *See, e.g., Ortiz-Moss v. N.Y. City DOT*, 2008 U.S. Dist. LEXIS 32048, at *51-52 (S.D.N.Y. Apr. 18, 2008); *see generally Cruz*, 202 F.3d at 570 ("Isolated instances of harassment ordinarily do not rise to th[e] level [of hostile work environment].")

The Court is cognizant of the fact that the Second Circuit in *Cruz* stated that (1) in determining whether there is sufficient evidence of a hostile work environment, a court must "focus[] on the nature of the workplace environment as a whole" as "a plaintiff who [him]self experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support [his] claim; (2) "offensive remarks or behavior [need not] be

directed at individuals who are members of the plaintiff's own protected class"; and (3) where there is evidence of more than one form of hostility, the "interplay" between the various forms of harassment should be considered. 202 F.3d at 570, 572. The *Cruz* Court also noted, however, that because the evidence before it was sufficient to support independent racial and sexual harassment claims it need not reach the issue whether a plaintiff may aggregate evidence of two types of harassment to support a hostile work environment claim where neither charge could survive on its own. *Id.* at 572 n.7.

Here, the charge of a hostile work environment based on religion falls far short of being able to survive on its own. In fact, Plaintiff cites but one offensive religious based comment by Chalom over the course of eight and one half years, which comment, as a matter of law, did not alter Plaintiff's workplace. *See Alfano,* 294 F.3d at 380; *Dauer v. Verizon Communs. Inc.*, -- F. Supp. 2d --, 2009 WL 691464 (S.D.N.Y. Mar. 17, 2009). While in close cases evidence of one type of harassment may arguably be used to sustain a claim of another type of harassment, such aggregation is inappropriate where, as here, the claim sought to be buttressed is patently inadequate. Which is to say, aggregation may be appropriate to nudge, but not catapult, a claim across the line between merely offensive conduct and conduct sufficient to establish a hostile work environment. Moreover, in this case there is no nexus between the religious harassment and the other types of discrimination alleged. In such instances, aggregating the evidence of different types of harassment is inappropriate. *See Davis v. Verizon* Wireless, 389 F. Supp. 2d 458, 476 (W.D.N.Y. 2005). See generally *Oncale v. Sundowner Off shore Servs. Inc.*, 523 U.S. 85, 81 (1998) (Title VII does not create a "general civility code"); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) ("not all workplace conduct that may be described as harassment

affects . . . employment within the meaning of Title VII.").

Defendants' motion for summary judgment on Plaintiff's hostile work environment claim based on religion is granted.

### C. Hostile Work Environment Based on Disability

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., prohibits employment discrimination by a "covered entity . . . against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Employers of persons with disabilities are required to make reasonable accommodations for otherwise qualified individuals with disabilities and are prohibited from retaliating against an employee engaged in activities protected under the statute. *See id* §§ 12112(b)(5)(a), 12203(b).[7] Although the Second Circuit has not expressly held that the ADA authorizes claims for hostile work environment, district courts in the Southern and Eastern Districts of New York have found that the ADA encompasses hostile work environment claims. *See, e.g., Monterroso v. Sullican & Cromwell, LLP*, 591 F. Supp. 2d 567, 585 (S.D.N.Y. 2008) (citing cases). A plaintiff claiming hostile work environment based on disability must demonstrate that he is a member of the

---

[7] The Court notes that the ADA was recently amended to substantially change the evaluation of ADA claims. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). The ADA Amendments Act expressly provides that its provisions shall not take effect until January 1, 2009. When a case implicates a federal statute enacted after the events in suit, that statue will not be construed to have retroactive effect absent clear congressional intent. *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). Given the 2008 Act's express effective date, there is no clear congressional intent to have it apply retroactively. Accordingly, the Court shall not apply the 2008 Amendments retroactively to the conduct at issue which preceded the 2008 Act's effective date. *Accord EEOC v. Agro Distr. LLC,* 555 F.3d 462, 469 n.8 (5th Cir. 2009); *Kiesewetter v. Caterpillar, Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008); *Budde v. Kane County Forest Preserve*, 2009 WL 736646, at *4 n.4 (N.D. Ill. Mar. 19, 2009); *Amorosi v. Molino*, 2009 WL 737338, at *4 n.7 (E.D. Pa. Mar, 19, 2009); *Czapinski v. Iron City Indus. Cleaning Corp.*, 2009 WL 614808, at *2 n.2 (W.D. Pa. Mar. 5, 2009).

protected class. Which is to say, he must meet the definition of disability contained in the ADA. *See id; see also Caronia v. Hustedt Chevrolet, Inc.*, 2009 WL 909724, at *8 (E.D.N.Y. Apr. 1, 2009).

An individual with a "disability" is defined as any person who (1) has a physical or mental impairment that "substantially limits" one or more "major life activities"; (2) has a "record of such impairment"; or (3) is "regarded as" having such an impairment. 42 U.S.C. § 12102(2). Disability determinations are made on a case by case basis. *Reeves v. Johnson Controls World Servs. Inc.*, 140 F.3d 144, 151-52 (2d Cir. 1998). Plaintiff asserts that he qualifies under the third definition in that Chalom regarded him as having an impairment. (Pl.'s Mem in Opp. at 21 ("Even if Weiss's performance of his job was not impaired by his diabetes, it is clear that Chalom, at the very least, perceived Weiss to be impaired, and harassed him on that basis.")

Weiss's claim that Chalom regarded him as disabled depends not on the existence of an actual disability but on "the employer's perception of the employee" and is a question of "intent." *Capobianco*, 422 F.3d at 57 (citations and internal quotations omitted). However, "[i]t is not enough that the employer perceive the employee as somehow disabled; the employer must regard the employee as disabled within the meaning of the ADA, i.e., having an impairment that substantially limits a major life activity." *Id. Accord, Jacques,* 386 F.3d at 201; *Colwell*, 158 F.3d at 646.

The purpose of the "regarded as" definition of disability is to "cover individuals 'rejected from a job because of the "myths, fears and stereotypes" associated with disabilities.'" *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489-490 (1999) (quoting 29 C.F.R. pt. 1630, App.

§1630.2(l)).  A regarded as claim may be proved by showing either "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489; *see* 29 C.F.R. § 1630.2(l).

Defendants argue that Weiss's claim must fail because there is no evidence that he was *actually* limited in a major life activity.  However, as noted above, in a "regarded as" case it is sufficient if the employer mistakenly believes that an impairment substantially limits one or more major life activities.   Here, given the nature of Chalom's statements a jury could find that he mistakenly believed that diabetes limited Weiss ability to have sex.

Neither party addresses the issue of whether sex constitutes a major life activity. Assuming *arguendo* that it does and therefore Chalom regarded Weiss as having a disability that substantially limits one or more major activities, the three comments identified,[8]  while crass and inappropriate, simply are insufficient to create an objectively hostile work environment because of disability.  Three or four comments over a period of approximately nine years can only be characterized as infrequent.  Also, the comments were not physically threatening and there is no evidence they unreasonably interfered with Weiss's work performance.   Finally, for the reasons, discussed in connection with Weiss's hostile work environment based on religion, it is inappropriate to aggregate the various forms of harassment alleged.

The motion for summary judgment on Weiss's claim for hostile work environment based

---

[8]  The Court shall not consider Chalom's alleged statement to another employee who requested a handicap railing as the only evidence submitted to support that the statement was made is the hearsay assertion contained in that employee's complaint.

on disability is granted.

**D. Hostile Work Environment Based on Sex**

Defendants' have moved for summary judgment dismissing Weiss's claim for hostile work environment based sex. They maintain that under prudential standing standards Weiss cannot assert hostile work environment claims based on the harassment of others who belong to a protected class of which he is not a member.

In its decision in the related case of *Ventimiglia v. Hustedt Chevrolet*, Civil Action No. 05-4149 (Memorandum & Order dated March 25, 2008), the Court addressed this very issue and concluded that "prudential standing considerations support limiting 'aggrieved persons' to those persons who are injured as a result of discrimination directed at such individual's protected class." *See* slip op. at 19-20. The Court further concluded, however, that to the extent a plaintiff can assert an injury caused by conduct directed against him because of his race or sex and his association with someone of another race or sex, such injury would be sufficient to satisfy prudential standing concerns. *See id.* at 20-21.

Here, Weiss is not asserting an injury solely caused by hostility in the workplace directed against members of a protected class to which the plaintiff did not belong, Weiss asserts that his claim of sexual harassment survives because he is complaining of conduct that was directed at him because of his sex (and his association with members of the opposite sex) and not merely an adverse reaction to someone else's injury.

Here, a jury could find that Weiss was harassed because of his sex, male, and his association with Caronia, a female. For example, he states:

> A part of the hostile work environment that I experienced at

Hustedt was related to the office manager, [Caronia]. Chalom wanted to be involved in a personal relationship with Caronia and she refused his advances. For some reason, he began to accuse male employees of having sex with her, including, among others, me . . . . Chalom repeatedly interrogated me and the other male employees as to whether we were having sex with Caronia and even though we denied it, he kept asking these offensive questions. He also interrogated Caronia over and over about having sex with me and other male employees at Hustedt, even though she denied any such things. . . . In 2004 Chalom told me he was planning to send me to work only at the Hyundai dealership across the street from Hustedt Chevrolet to get me away from Josephine Caronia. Chalom told me this was because I was getting "too close" to [Caronia] and I understand that he testified in his deposition that he still believed, even then, that I had been too close to her. I protested this plan because the Hyundai dealership had a low sales volume and it would have resulted in my earning much less money. This occurred during a time when I was being subjected to a hostile work environment and harassment, partially because Chalom kept accusing me of having an affair with [Caronia]. . . . I never actually transferred to Hyundai because at about the same time, I told Chalom I was no longer going to work in the bad work atmosphere he created and demanded the money he owed me.

Weiss Aff. (Ex. 1 to Simon Aff.) at ¶¶ 23-26, 44-45. (paragraph numbering omitted).

The above cited testimony makes evident Weiss is not simply claiming an adverse reaction to someone else's injury. Rather, he is complaining of conduct directed at him. *Cf. Patane,* 508 F.3d at 114 ( "a plaintiff need only allege that she suffered a hostile work environment because of her gender, not that all of the offensive conduct was specifically aimed at her"). Accordingly, a jury could conclude that Weiss was subject to a hostile work environment because of his sex. In other words, construing all facts most favorably to him as the non-movant, but for his sex Weiss's relationship with his female co-worker would not have been an issue. Thus, as in *Holcomb,* a jury could conclude that the treatment of which Weiss complains was due, in part, to his membership in a protected class. Accordingly, the motion for summary

judgment on the hostile work environment claim based on sex is denied.

To summarize, the motion for summary judgment on the hostile work environment claims is granted with respect to the claims based on disability and religion, and denied as to the claim based on sex.

## III. Constructive Discharge

To find that an employee's resignation amounted to a constructive discharge, "the trier of fact must be satisfied that the . . . working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Whidbee v. Garzarelli Food Specialities, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000).

Defendants' argument for summary judgment on Weiss's constructive discharge claim is premised on Weiss's deposition testimony concerning the conversation he had with Chalom about leaving his employment. In response to a being asked to state the facts and circumstances that led up to his decision to leave, he testified:

> The work environment there was increasingly becoming more uncomfortable to be there; the way that the owner treated myself and other employees, the language he used with people, the physical actions he took. By "physical" I mean, touching people inappropriately, putting people in a job position with me that were unqualified. Making comments to me. Demeaning the way I worked, that were not correct or accurate. Accusing me of having a sexual relationship with [] Caronia because he was jealous of her. I believe there were a lot of different things. . . . Also the fact that he wasn't paying me. He owed me money that he refused to pay. He was cheating me on commissions, changing commissions after deals were delivered.

(Weiss July 11, 2007 Dep. at 13-14.[9] )

_____

[9] The copy of the July 11, 2007 deposition filed with the Court is unpaginated, apparently due to a lack of care in copying the original. In calculating the page numbers, the Court counted

Emphasizing the latter part of the testimony regarding not being paid, Defendants argue, without citation to relevant authority, that "[I]t is clear from Plaintiff's testimony that had Defendant Chalom just paid the alleged outstanding wages he would have stayed. Thus, all of the other alleged reasons Plaintiff proffered, e.g., harassment, were not material to his decision to resign." Defs.' Mem. in Supp. at 25.

The Court rejects Defendants' argument. First, as discussed *infra*, the trier of fact could conclude that the failure to pay him was in retaliation for his complaints to Chalom about his treatment of Caronia. Second, to the extent the evidence permits differing inferences to be drawn, it is for the trier of fact to determine the reason for Weiss's resignation.

## IV. Retaliation

### A. The Standard

Title VII "forbids an employer to retaliate against an employee for, inter alia, complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)). Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas*. *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003).[10]

Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to

---

the cover page as page one and continued thereafter.

[10] Retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII. *See Schiano v. Quality Payroll Sys. Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).

articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the

*McDonnell-Douglas* framework and its presumptions and burdens disappears, leaving the sole

remaining issue of "discrimination vel non," and thus (3) the burden shifts back to the plaintiff to

prove that the employer's stated reason is merely pretextual and that discrimination was an actual

reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods. Inc.*, 530

U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this

framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

"In order to present a prima facie case of retaliation under Title VII . . . , a plaintiff must

adduce 'evidence sufficient to permit a rational trier of fact to find [1] that []he engaged in

protected participation or opposition under Title VII, [2] that the employer was aware of this

activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal

connection exists between the protected activity and the adverse action, i.e., that a retaliatory

motive played a part in the adverse employment action.'" *Id.* at 205-206 (brackets in original)

(quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)).

The burden of establishing a prima facie case has been described as "modest," *Viola,* 42

F.3d at 716, or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001).

It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves*, 530

U.S. at 143.

Likewise, the employer's burden of showing a legitimate non-discriminatory reason for

its actions is not a particularly steep hurdle. It is not the court's role to second-guess an

employer's personnel decisions, even if foolish, so long as they are non-discriminatory. *See Seils*

*v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 111 (W.D.N.Y. 2002) (citing, *inter alia*, *Meiri*, 759 F.2d at 995 (2d Cir. 1985)), *aff'd*, 99 Fed. Appx. 350 (2d Cir. 2004). Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and may not "sit as super personnel departments, assessing the merits — or even the rationality — of employers' non-discriminatory business decisions." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

In order to demonstrate that the employer's stated non-discriminatory reasons for the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). A discrimination claimant may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bombero v. Warner-Lambert Co.*, 142 F. Supp. 2d 196, 203 n.7 (D. Conn. 2000) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999), and citing *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)), *aff'd*, 9 Fed. Appx. 38 (2d Cir. 2001).

However, to rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all [discrimination] cases." *Meiri*, 759 F.2d at 998.

With these standards in mind, the Court shall proceed to address Weiss's retaliation claim.

**B.      Material Issues of Fact Exist as to Plaintiff's Retaliation Claim**

In their motion for summary judgment on Plaintiff's retaliation claims, Defendants maintain that Plaintiff did not engage in protected activity and cannot show either an adverse employment action or a causal connection between the alleged protected activity and the alleged adverse employment action.

The first element of the prima facie standard requires that Weiss have taken "action . . . to protest or oppose statutorily prohibited discrimination." *Cruz*, 202 F.3d at 566; *see Taylor v. Family Residences & Essential Enterprises, Inc.*, 2008 WL 268801, at *13 (E.D.N.Y. Jan. 30, 2008). This includes, for example "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990; *see Cruz,* 202 F.3d at 566. Indeed, Title VII's protection against retaliation extends to an employee who speaks out about discrimination not on her own initiative, but in answering

25

questions during an employer's internal investigation "if for no other reason than . . . '[w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication 'virtually always' constitutes the employee's opposition to the activity.'" *Crawford v. Metro. Gov't of Nashville and Davidson County Tennessee*, 129 S. Ct. 846, 851 (2009) (ellipses in original omitted).  In order to satisfy this prong of a retaliation claim, the plaintiff need only have a good faith reasonable belief that he was opposing an employment practice made unlawful by Title VII."  *Kessler,* 461 F.3d at 210; *see Everson v. New York City Transit Auth.*, 2007 WL 539159, *27  (E.D.N.Y. Feb. 16, 2007) ("protected activity . . . refers to any action taken to oppose statutorily prohibited discrimination").  Additionally, "in satisfying the knowledge requirement, only general corporate knowledge that the plaintiff engaged in a protected activity is necessary."  *Id.*

Viewing the evidence in the light most favorable to Plaintiff, as the Court must, there is sufficient evidence that Weiss engaged in protected activity.  Weiss's informal complaints and statements to Chalom regarding his conduct towards Caronia are sufficient to meet the protected activity prong of his retaliation claim.  *See Lamberson v. Six West Retail Acquisition Inc.,* 122 F. Supp. 2d 502, 511 (S.D.N.Y. 2000) ("Protected oppositional activities include informal as well as formal complaints and complaints to management"); *cf. Crawford*, 129 S. Ct. at 851.

Moreover, there is a question of fact whether Plaintiff suffered an adverse employment action.  For example, there is evidence from which the trier of fact could conclude that in response to Weiss's protests of the treatment of Caronia, Chalom withheld Weiss's commissions. The trier of fact could also conclude that Chalom's decision to transfer Weiss to Hyundai, Inc., which transfer was averted by reason of Weiss' alleged constructive discharge, was in retaliation

26

for Weiss' protected activity.

Turning then to Defendants' argument that Plaintiff cannot show a causal link between the alleged protected activity and the alleged adverse employment action, the Court finds it unpersuasive. Defendants maintain that the allegation in the complaint that Plaintiff was constructively discharged "as a result of Chalom's false accusations of an affair between Weiss and Caronia" is inconsistent with the allegation that he was constructively discharged "in retaliation" for his opposition to discrimination. This argument, however, fails to recognize that both reasons could have played a part, i.e., that there was a mixed motive. Defendants also argue that Plaintiff's purported concession of a "non-discriminatory" reason for the discharge, i.e. false accusations of an affair with Caronia, dispels any inference of causation. Here, however, Plaintiff asserts a sexually hostile work environment based on Chalom's accusation of an affair between plaintiff and Caronia and therefore the accusation is not necessarily a non-discriminatory reason for the discharge. *See* discussion *supra*.

The motion for summary judgment on Plaintiff's retaliation claim is denied.

## V.  The Claim for Unpaid Vacation Under The FMLA and the New York Labor Law

Weiss asserts that he was entitled to be paid for two weeks vacation in 2004. More specifically he claims that either he should have been able to use his two weeks vacation during March 2004 under the FMLA when he was hospitalized due to an accident or he should have been paid for it when he left Chevrolet Inc in November 2004.

Defendants have moved for summary judgment on Plaintiff's claim for unpaid vacation under the FMLA and the New York Labor Law claiming they are deficient as a matter of law. Plaintiff has cross-moved for summary judgment on these claims. Both the  motion and the

cross-motion are denied.

First, neither party has provided the Court with sufficient details to determine, for example, how vacation accrued (was it bi-weekly, monthly or yearly). Such information is required before the Court can begin to analyze the claims to determine whether there are questions of fact or whether one party or the other is entitled to judgment. There are also questions of fact which preclude summary judgment. For example, whether Weiss had an unused vacation time available when he was hospitalized in March 2004 and whether he was employed in an executive, administrative or professional capacity. The Court also notes that the document which Plaintiff proffers as Chevrolet Inc.'s Employee Policy Manual (Simon Ex. 10) is not properly authenticated. Finally, notwithstanding Defendants' assertion to the contrary, private causes of action are available under New York's Labor Law. *See, e.g.,* N.Y. Labor Law § 198; *AHA Sales Inc. v. Creative Bath Prods. Inc.*, 58 A.D.3d 6 (2d Dept. 2008).

## VI. The Claims against Hustedt Chevrolet, Hustedt Hyundai, and Hustedt Hyundai, Inc. Are Dismissed

The claims against Hustedt Chevrolet and Hustedt Hyundai are dismissed. No such entities named Hustedt Hyundai and Hustedt Chevrolet exist. Rather, those names are used interchangeably with Chevrolet, Inc. and Hyundai, Inc.

It is undisputed in this case that Plaintiff's employer was Chevrolet Inc. (Weiss Dep. at 25 ("I worked for Hustedt Chevrolet . . . .").) "The existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). Plaintiff's claims under the FMLA and the New York Labor Law also depend on the existence of an employer-employee relationship. *See, e.g.,* 29 U.S.C. §

2601, et seq.; N.Y. Labor Law § 198.   As there was no employer-employer relationship between

Plaintiff and Hyundai, Inc. the claims against it are dismissed.

## Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is granted as

the hostile work environment claims based on disability and religion; but is otherwise denied.

The claims against Hustedt Chevrolet, Hustedt Hyundai and Hustedt Hyundai, Inc. are dismissed.

Plaintiff's cross-motion is denied.

**SO ORDERED.**

Dated: Central Islip, New York
        July 13, 2009

/s/ _____
Denis R. Hurley
Senior District Judge